318-0252 Kessels Transport Company v. Jason Gaker Counsel, you may proceed. Justices, may I appease the court? Counselor, my name is Ethan Wolder and I represent the Appellate Kessels Transport Company in this matter. Our appeal of the former Workers' Compensation Commission's decision essentially hinges on one issue, and that is whether Petitioner's semi-car accident on October 31st, 2015 arose out of and in the course of his employment. The standard of use for this appeal is a manifest way to the evidence standard, so an opposite conclusion must be clearly apparent to overturn the Commission's decision. In the Workers' Compensation case, Petitioner must prove by her clients and the evidence that his or her work accident arose out of and in the course of his or her employment. Now, Petitioner was clearly involved in a truck accident the morning of October 31st, 2015 when he drove a semi-truck off of the Round Inn to an embankment. Now, was he driving that truck as an employee of your client? He was. Okay, so he was doing his job. Correct. Okay. And so where did it go wrong then? Because he didn't have a license? Yeah, that's part of it. No, it's not. We thought you'd say that. Okay. Now, that's a pretty compelling argument I think we'd have to concede, but answer me this one question. The fact that he didn't have a valid license, wasn't Kasson's number two boss aware of that? They were not aware of it at that time. They were not aware of it in July of 2015?  Kasson was not aware the claimant had been cited for not having a valid license in July of 2015? They were not aware of it? They were aware of it at that time and then it was corrected. It was due to the medical card issue. He was actually in Wisconsin on July 4th, 2015 when he was stopped by a cop for making loud noise. The cop found out that he did not have a valid CDL. Now, what is your argument about this not having a proper license or not being a proper license? What does that do under the Trump law? What does that do? Does that take him out of an employee status or what does it do? I'm trying to figure that out. Well, it's not a law that a truck driver that has a commercial driver's license or CDL is required to report that he or her employer any license suspension within 24 hours of knowing of that license suspension or by the next business day. The petitioner testified at the hearing that he was aware of this procedure in law. So going back to July... Was he still acting within the sphere of his employment when he was driving that truck? He was still in the course of his employment, but we are in the Republic Iron and Steel case. It does not matter in the slightest degree how many orders the employee disobeys or how bad his conduct may have been if he was still acting in the Supreme Court. What was the date of that decision? 1922. Well, the Stembridge decision stated that in that case a 17-year-old was running an errand for an employer. Stembridge, is that Cepeda versus Stembridge? Yes. Stembridge, I'm familiar with that case. And he was driving at excessive brake speed, 35, 40 miles an hour. And the commission held it didn't take him out of the scope of his employment, correct? Correct. They found that he was negligent, but his conduct was not willful and wanton. So I think if they found his conduct was willful and wanton, that would have taken him out of the scope of his employment. And that is basically our argument. In McCarran versus the Industrial Commission, the guy was drinking, but he wasn't drunk. And we held it was compensable because he wasn't taken out of the sphere of his employment, he was still doing his job. In J.S. Mason versus the Industrial Commission, in that particular case, he failed to follow the safety regulations and was injured when he came down. I think he was loading bricks. His duty was to relay bricks, blocks, and mortar to the bricklayers. And he didn't use the safety belts. And he fell off the scaffold. But Republic has never been overruled. We relied on it. We relied on Republic in 2006, in 2005. And Republic is very simple. It doesn't make any difference how many rules he violates. If he's operating within the sphere of his employment and he's not on a personal escapade, he's covered. But in this instance, if Petitioner would have pulled his employer, Castens, as the license was suspended on October 31st, 2015, he wouldn't have been driving for Castens that particular day. He's required by law to report any license suspension. We understand that, but how does that take him out of the sphere of his employment? He was driving the truck as an employee of Castens for Castens' benefit. He wasn't delivering a bicycle for his kids, was he? I don't believe that his actions of driving without a valid CBO benefits Castens' business interests. Did he haul product for Castens? He did, but in actuality, Castens allowed his truck drivers to operate semi-trucks without valid CBOs. We understand all that. I'll read it again to you. It does not matter in the slightest degree how many orders the employee disobeys or how bad his conduct may have been if he was still acting in the sphere of his employment and in the course of it when the accident arose. So in that theory, are you saying that he can break the law and still have it? He can speed if he's driving while he's drinking as long as it doesn't take him to a point where he is no longer acting in the sphere of his employment. Okay. And he doesn't have to be honest with his employer about it? Well, you can fire him for not being honest, but the fact of the matter is if he's still operating in the sphere of his employment in our republic, he recovers. See, this act is a remedial act. It's a statutorily created act. We're not talking about negligence, obviously. Sure. And so if indeed, arguably, that your argument, which I'm sure the public would like to believe would maybe be the state of the law, it's going to take a revision of the act. Are you talking about section 11, which has specific actions that will take a person out of the scope of employment? Yeah, because we have decisional law now that says the sphere of employment or the scope of employment back to 1922 or wherever in the republic has defined that as still allowing recovery under the act. I believe these cases are still being litigated. Of course they are. Of course they are. Yes. Very similar issues that I've seen in a lot of these cases coming up here. So you don't have any cases you can call our attention to that says the mere fact that the driver who's authorized to drive the company doesn't have a valid license takes them out of the scope of employment, correct? I wish I did. That's why I wanted to focus you originally on this idea of licensing, because it seems to me to be that's in a broad way. That's your argument that not having the proper license required of an employee. Well, I think you would like to see, say, improper and not having license, proper license that will allow you to perform a duty while in the workplace is like a frolic behavior. It takes you out of the sphere and scope of employment. I'll give you two other cases that stand for the proposition. In 2000, the Illinois Supreme Court in Sanders versus the Industrial Commission issued a decision in which it held that an employee's injury does not arise out of his employment when the injury is the result of an activity prohibited by company rules and conducted solely as a personal convenience. In the Chadwick case, this court held that an injury suffered when an employee is performing duties for which he was hired arises out of his employment without regard to the fact that the employee knowingly violates safety rules. So it occurs to me that Republic is still good law and that the Supreme Court has followed it as late as the year 2000. And it may very well be that if your client had known that this guy didn't have a current license or that it was suspended, that they wouldn't let him go in their truck. But the fact of the matter is, when he was driving in a truck on the day he was hurt, he was in the sphere of his employment performing duties for your client. Counsel, you said something. I want to get back to the evidence in this case. Cassins was aware of the claim that he was cited for operating a commercial vehicle without a license as of July 4th, 2015, and yet he continued to operate the truck for Cassins until the accident in October. Were they not aware of his position? They didn't know he was cited for not having a CDL on July 4th, 2015? They were aware of that. Was that relevant and important? It is important. That was for a medical harm issue, as Petitioner had testified, and that was remediated. And the terminal manager, Cassins, checked into the status of his license in July and found out that his license was not at that time. I believe July 10th was the date of that, based on his employment records. He did not work continuously, again, from July to October. Okay. The claimant testified he knew that his CDL was suspended on October 31st, 2015? He would not have been to that trial since he had a charge that he sinned in January of 2016, but he would not admit to it. So did the commission conclude that he was unaware of it? Did they make any findings on that issue? Commissioner Landward did in his dissent. In his dissent, he said, and I quote, withholding information from the employer regarding the prior legal action on your CDL is wrongful, and the act of driving in disregard of your legal ability to do so is wrongful. But was there any evidence that he was aware that it was suspended on the date of the accident? We had no evidence to confirm that. One way or the other. Okay. But it had been suspended for at least over a month. So I'd have to infer, unfortunately, with these first cop trials, this is a 19B hearing, so they're usually rushing to get your evidence as quick as possible. And I want to bring it up. I'm not saying that it's even necessary. I'm going to litany of cases my learned colleague cited, but I just bring that up because it's a factual matter. It would also weigh in favor of the commission's decision. Right. And then their trooper, Manny, also testified that the commission's license was suspended at the time of the accident according to his reading of the Illinois State Police database. So you would want to see a decision if that willful and wanton behavior was the case here because the licensing was, federal licensing, et cetera, was not proper for this employee, right? Right. Plus failure notice. The willful and wanton conduct of knowingly driving with a suspended license and failing to report this license suspension to his employer as required by law, that is not reasonable on the commissioner's part and that would not be foreseeable to the employer in this matter. And that is the basis of the argument of why we want the Illinois Workers' Compensation decision on the issue of the accident to be overturned. Okay. But I also have additional details about the accident that were in the record. I think between the records are different interpretations from how the accident actually occurred on October 31, 2015. Does that really tip the scales here? Does that really matter how it happened? I know you're going to tell us that he may have, I mean, by implication, you can read that he may have lied as to how the accident happened, correct? He may have fallen asleep. Okay. But again, is that willful and wanton conduct that takes him out of the scope of what he says afterwards? If a truck driver falls asleep while he's driving his truck and runs into an embankment, does that take him out of the scope of his employment? I'm not saying that. Okay. I hope not. I believe he still has to prove by proponents of the evidence that his work accident arose out of him in the course of his employment. Well, he was driving the truck. It's undisputed. How the accident happened, why is that relevant? I think it is relevant. How? Because if he fell asleep due to some kind of drug use. Well, did he? Well, now we're back to the Adderall issue. Yeah. Well, that's part of it. It was rejected by the commission, by the way. Was it not? It was rejected. Well, they said it was an accident, and so this case is compensable more or less. That's what the decision said. Is there anything in the record that says that the accident was as a result of his taking Adderall? No. Okay. Well, that argument's out. What else you got? There's also some credibility issues on the part of the claimant. He completed an accident report after his injuries and only listed the citation for improper language. Okay. Your time is up. I was trying to help you there. It's a very strong argument. If you get going, you'll have time to reply. Thank you. Give the gift. Why isn't this willful and wanton behavior? I'm sorry? Why isn't this willful and wanton behavior? Why is this not willful? Because. Beckle? Yes. First of all, I'm Mike Hellman. Beckle, thank you. Yes. Thank you, Justice. So it's not willful and wanton behavior because the petitioner in this case was under the valid assumption that he had a valid CDL at the time of the accident. And I'd be happy to go through what I call three incidents involving his CDL to show that there was no proof by the respondent that the CDL was actually invalid at the time of the accident, if I may, Your Justice. Let's go back to June. I want to get more basic. Would it make any difference? How would it make any difference? Whether it was invalid. Yeah. Valid or invalid. How does it make any difference? It wouldn't. Well, then why do we go into it? Well, I don't want to go into it because it's willful and wanton. Is it or is it not? And so part of willful and wantonness is knowledge, I think. Yes. Correct. Correct. But there's absolutely no evidence in the record either to show that the license wasn't valid. So let's go to June 22, 2015. He gets cited for no insurance on his vehicle. Okay. This is at Respondent's Exhibit 11. Now, I have a question about this. Okay. Is he an employee of Kasson's? Yes. And what is this no insurance on his vehicle? Is it his tractor? Well, again, I think it was on a personal vehicle, Your Honor. Oh, okay. But could that affect his CDL? I don't know. That evidence is not in the record. But nonetheless, the Respondent argues that this June 22, 2015, no insurance on the vehicle has some effect on his validity of his CDL. Well, you have to have a valid driver's license? I would assume, yes. All right. Yes. And can your license be invalidated for violations when driving a private vehicle? Well, sure. Sure. I mean, State law requires it. Sure. Okay. So if that's taken away, do you still have a valid CDL? But it wasn't taken away. Okay. And that's what I want to point out. Okay. In Respondent's Exhibit 11, there's an ex parte finding of guilty according to the driving record on July 14, 2015. Then the petitioner himself, on August 6, 2015, goes in and files a motion to vacate the ex parte driver. Okay. Respondent's Exhibit 11 also shows September 8, 2015, there's a Novo Prosecco filed by the State Attorney. A Novo Prosecco. That I butchered that Latin name. Yes. Well, it was known as Nally Cross in the triangular. It's been a while. For those who don't know how to pronounce Latin. So the point being, from incident number one, your honors, the June 22, 2015, there's absolutely no evidence that his CDL would have been invalid from that incident. Which then takes us to the Wisconsin incident that I'd like to refer to. July 4, 2015. He's up in Wisconsin delivering vehicles late in the night. There's a noise complaint from a neighbor. Officer Nelson from the Mequon Police Department arrives at the scene, runs his license, and according to the Department of Transportation, what the officer Nelson's report states, is that there's some issue with the CDL again. Okay. Petitioner apparently told Officer Nelson that a few weeks ago his CDL was canceled, but his company cleared him to drive, so he assumed his CDL was valid. Petitioner also testified in relation to this that it had apparently something to do with a medical card issue. This was backed up by the office terminal manager, Thomas Zitt, who testified on behalf of the respondent, who stated that he had received a phone call from the medical review officer stating that there was an issue with a drug test that had been taken around this time by Petitioner. Mr. Zitt then further testified there was a second drug test that was taken. Petitioner passed, no issues, and he was active again as of June 29, 2015, to drive for respondent. Now, in terms of the Wisconsin citations that he received for the invalid CDL, he initially went to court, he the petitioner, on August 13, 2015, and entered a plea of not guilty. On October 19, 2015, the Wisconsin court appearance, he changes his plea to no contest and essentially pays a $200 fine. So the court costs and forfeits his bond, and that's the final court judgment October 19, 2015. Did that cause his license to be suspended, and did he know it? I'm sorry? Did that cause his license to be suspended, that judgment, and did he know it? No. It was cleared up that day. I'm assuming he was under the assumption that it was done. Once you pay your fine, you plead your gun, you're out. So in essence, you're telling us, after that long litany, that there's no evidence in this record that he knew he did not have a valid license on October 30. Is that what you're telling us? That's correct. Okay. And then we get to the accident itself. Again, I can't tell you why Elmhurst State Trooper Bandy runs his license and comes up and bails in Trooper Bandy's system. Okay? This is in his squad car, obviously. I don't know if that same system is connected to the Secretary of State. That's not in the record. We don't know if the Wisconsin disposition 12 days before, on October 19, 2015, had made its way into the Illinois system. We don't know. That's not in the record. If I had been the trial attorney, I probably would have asked Trooper Bandy that, but it wasn't. So one can assume, or, well, let me say this. The Wisconsin disposition, well, let me show you. Petitions Exhibit 5, and then, again, in relation to the tickets or citations issued on the date of the accident in this case, Petitions Exhibit 5 shows that all of those were, again, dismissed with no prosecution by the state's attorney, and that's where the citations are. Can I try and call out the essence of your argument here? Are you saying, first of all, there really is no evidence that establishes in the record that he knew his license was suspended in the first place, and even if it was suspended, his actions of driving without it did not take him out of the scope of employment? Is that the correct summary of your argument? Yes, sir. Okay. I think we understand that. Okay. Thank you very much. We have to accept the willful and wanton behavior, right? Does willful and wanton behavior take you out of the scope of your employment? According to Republic, it doesn't. Well, there's no evidence of that in this case, so I don't think it would apply. It's out of the house. Okay. Thank you. Do you have time to reply, counsel? I believe there is proof that Petitioner CDL was invalid on the day of the accident. The guard report from New Orleans Secretary of State, October 6, 2015, shows his license was suspended. Did he know that? Yeah, but how do we know he knows that? Did he know that? I don't have any letter to him stating that his license is suspended. And it was an ex-party judgment that resulted in the suspension. Was it that? Yeah. So if he didn't know it, how could it be willful and wanton? Well, that's where the credibility issue comes in, too, as well. He completed an accident report for cabsins and only listed that he received a citation for improper lane usage, which in reality was supposed to list all citations, which listed no LCDL, no proof of insurance. Yeah, but how do we know? No proof of insurance is from he didn't have an insurance card after the accident. Let's assume for the sake of the argument you're right. He lied about how the accident happened. He lied about the police report. But do we make the leap, then, we must assume that he knew? Can a finder of fact do that? We must assume he surely knew that his license was suspended because he lied about these things? How do you make that conclusion? I think you can make that conclusion just based on all of the evidence on the record. Oh, really? It had been suspended before. I guess he did not know about those license suspensions as well. Wouldn't that be basically operating on speculation and conjecture? We had a commission in which he was aware of those license suspension laws. Commissioner Langworth did that. But the majority did not say that. So I don't think it was addressed in the majority's decision. It wasn't, right. Another issue we were arguing is that we did not believe petitioner's or petitioner failed to prove that his current condition, although he was constantly relating to the wench work accident. The last time he had a wench for this injury was on December 21st. Did you argue that in your original argument? No. Did you argue that in your original presentation? I did not at that time. Arguing it only in rebuttal is like checking and raising a card game. You've deprived him of the ability to respond to it. Okay. You can't argue in rebuttal what you didn't argue or he didn't argue in his argument. Okay. I agree. I have a question about the mechanics of this insurance card. This tractor trailer is overturned and burning up, right, the tractor. And so you can't produce proof of insurance, right? I think that's unspeculating. That seems to be what I understood. Is it his insurance card that underlies his general driver's license? I think it was the insurance card for the particular truck he was. Oh, okay, okay. And you couldn't produce that. So I think that's an easy one to figure out afterwards. Yeah, which was apparently. Right. So, in conclusion, petitioner's conduct is known to be driving on a suspended license and failing to report his license suspension to cases that require by law. Would we believe this alone should overturn the Illinois Workers' Compensation Commission's decision on the issue of accidents, since we believe the opposite conclusion is clearly apparent? Thank you. Very good. Thank you, counsel, both for your arguments in this matter. It will be taken under advisement.